IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| WILDFIRE GROUP, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.: 2:12-cv-847-MEF |
| | ) | (WO—Publish) |
| PRIME INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant Prime Insurance Company's ("Defendant" or "Prime") Motion to Dismiss for Improper Venue, or in the Alternative, for Forum *Non Conveniens* (Doc. #6) and Motion to Dismiss Amended Complaint (Doc. #12). For the reasons set forth below, the Court finds that the motions are due to be DENIED.

### I.  JURISDICTION

The Court has subject-matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332 (diversity).[1]  The parties do not contest personal jurisdiction and the Court finds adequate allegations supporting such.  Prime argues, however, that this case should be dismissed for improper venue under 28 U.S.C. § 1391(b), because of a forum-selection clause that it contends governs the forum and choice of law applicable to this dispute. The arguments of the parties are discussed below.

---

[1] Plaintiff is a limited liability corporation existing under Alabama law with its sole member, Whitney Maudsley, being an Alabama citizen. (Doc. #11, ¶ 2.)  Defendant is an Illinois corporation with its principal place of business in the state of Utah. (Doc. #11, ¶ 3.)  The Court is satisfied that the amount in controversy in this case exceeds $75,000, exclusive of interest and costs.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Wildfire Group, LLC ("Plaintiff" of "Wildfire") sells Vehicle Service Contract Buy Back Agreements on new and used vehicles to automobile dealers in several states. (Doc. #11, ¶ 7.) When a service contract provided by a dealer is not used by the customer during the term of the contract, Wildfire purchases the contract back from the dealer under the Buy Back Agreement. Prime and Wildfire entered into an insurance contract, whereby Prime would insure Wildfire for contractual liability arising out of the Buy Back Agreements between Wildfire and the various automobile dealers. Under the terms of the insurance policy, Prime insured Wildfire's performance under the Vehicle Service Buy Back Agreements.

As per the insurance policy, Prime and Wildfire created a Reserve Funds Trust Agreement ("Trust Agreement"). Under the Trust Agreement, Wildfire would deposit funds into the reserve account on a monthly basis. (Doc. #11, ¶ 15.) The Trust Agreement's purpose was to hold reserve funds to be repaid to dealers in the event that no claims have been made under the service contract and to hold the underwriting profits until the time when they may be distributed to both Wildfire and Prime. (Doc. #11, ¶ 10.) Profit sharing distributions are made to Prime and Wildfire, in accordance with the distribution terms of the trust, when all contracts written within a calendar year expire and there are no unpaid outstanding losses. (Doc. #11, ¶ 12.)

On October 6, 2011, Prime notified Wildfire of its intent to cancel the insurance policy as of December 9, 2011. (Doc. #11, ¶ 13.) Prior to the cancellation date, Prime expressed to Wildfire a desire to continue insuring Wildfire's Buy Back Program but

2

under renegotiated terms. For several months during negotiations, Wildfire continued to deposit monthly funds into the trust to support new Buy Back Agreements entered into by Wildfire under the belief that Prime intended to continue business relationships with Wildfire. (Doc. #11, ¶ 18.) Specifically, Wildfire alleges that the reserve funds deposited from December 9, 2011, through the date of its Complaint (Doc. #11) exceed $278,400.00. The parties were unable to negotiate new terms, resulting in the termination of their relationship.

Wildfire claims that Prime refuses to insure any Buy Back Agreements written by Wildfire after December 9, 2011. Additionally, Wildfire claims that Prime refuses to release the Trust funds, including those deposited by Wildfire after the termination of the insurance policy, even though dealers have submitted claims for reimbursement from the trust. (Doc. #11, ¶ 19.)[2] Wildfire claims that the conditions of the Trust Agreement require Prime to authorize reimbursement distributions within three business days, or notify the Trustor why a distribution is declined, neither of which were done by Prime. Accordingly, Wildfire was forced to pay five claims tendered under the Vehicle Service Contract Buy Back Agreements out of its own account, and Prime has refused to reimburse Wildfire out of the Trust account.

On August 6, 2012, Prime filed an action for declaratory judgment in Salt Lake County, Utah. Prime requested a declaratory judgment that: (1) the Policy cancelled on December 9, 2011, and Prime no longer has any obligation to Wildfire under the terms

---

[2] Under the Trust Agreement, a distribution from the trust requires the signature of both Wildfire and Prime.

and conditions of the Policy; (2) Prime should refund a balance of $20,000.00 to Wildfire because it has no continuing legal obligation under the terms of the Policy; (3) Prime should not negotiate the premium payments made by Wildfire because it has no continuing obligations under the terms of the Policy; and (4) the Trust assets should be administered consistent with the provisions of the Policy and Trust Agreement until all of the relevant contracts have expired.

On October 2, 2012, Wildfire filed its answer and counterclaim in the Utah action. (Doc. #11.) The same day, Wildfire commenced an action against Prime in this Court claiming: (1) breach of the duty of good faith and fair dealing; (2) tortious interference with contractual and business relations; (3) unjust enrichment and breach of fiduciary duty; (4) fraudulent inducement; (5) injunctive relief; and (6) declaratory judgment. Wildfire contends that this Court is a proper venue because the Trust Agreement, which forms the basis of this action, identifies Alabama law as the governing law with respect to construction, validity, and performance.[3] Additionally, Wildfire argues that venue is proper because the contract with Prime was entered into in Alabama. Wildfire also asserts that the forum-selection clause Prime attempts to invoke pertains only to the insurance contract, not the Trust Agreement that forms the basis of Wildfire's claims. On the other hand, Prime contends that a forum-selection clause included within the insurance contract mandates all disputes arising between the parties be litigated in the

---

[3] The choice of law provision states: "This Trust Agreement will in all respects be governed by, and construed in accordance with, the laws of the State of Alabama, including matters of construction, validity and performance, but excluding any rule or principle of conflicts of laws that might otherwise refer to the substantive law of another jurisdiction for the construction."

State of Utah. (Doc. #6.) Alternatively, Prime argues this Court should dismiss the action under the doctrine of forum *non conveniens* because Utah provides a more convenient forum for the parties to litigate their claims against one another. (Doc. #6.)

### III. LEGAL STANDARD

In the Eleventh Circuit, a motion to dismiss on the basis of a forum-selection clause is brought pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure as a motion to dismiss for improper venue. *Lipcon v. Underwriters at Lloyd's, London,* 148 F.3d 1285, 1290 (11th Cir. 1998). "A judge may make factual findings necessary to resolve motions to dismiss for ... improper venue," so long as the resolution of the factual disputes is not an adjudication on the merits of a case. *Bryant v. Rich,* 530 F.3d 1368, 1376 (11th Cir. 2008). Thus, in the context of a Rule 12(b)(3) motion to dismiss for improper venue, "the court may consider matters outside the pleadings such as affidavit testimony, particularly when the motion is predicated upon key issues of fact." *Belcher-Robinson, L.L.C. v. Linamar Corp.,* 699 F. Supp. 2d 1329, 1333 (M.D. Ala. 2010). When venue is challenged by a Rule 12(b)(3) motion, the plaintiff has the burden of showing that venue in the forum is proper. *Id.; Interlease Aviation Investors II (Aloha) L.L.C. v. Vanguard Airlines, Inc.,* 262 F. Supp. 2d 898, 913 (N.D. Ill. 2003); *Indymac Mortgage Holdings, Inc. v. Reyad,* 167 F. Supp. 2d 222, 237 (D. Conn. 2001).

A court "must accept all allegations of the complaint as true, unless contradicted by the defendants' affidavits, and when an allegation is so challenged the court may examine facts outside of the complaint to determine whether venue is proper." *Belcher-Robinson,* 699 F. Supp. 2d at 1333. A court must draw all reasonable inferences and

5

resolve all factual conflicts in favor of the plaintiff. *Id.*; *see Lawrence v. Dunbar,* 919 F.2d 1525, 1530 (11th Cir.1990) (holding that courts should apply the summary judgment standard when ruling on a motion to dismiss which asserts a factual attack on subject matter jurisdiction or a related type of motion, including ones for improper venue); *see also Hodgdon Powder Co., Inc. v. Clean Shot Techs., Inc.,* 92 F. Supp. 2d 1170, 1177–72 (D. Kan. 2000). "If the court chooses to rely on pleadings and affidavits, the plaintiff need only make a prima facie showing of [venue]." *Gulf Ins. Co. v. Glasbrenner,* 417 F.3d 353, 355 (2d Cir. 2005) (quoting *CutCo Indus. v. Naughton,* 806 F.2d 361, 364–65 (2d Cir. 1986)).

## IV. DISCUSSION

Prime's extensive briefing in support of its motion contains two principal arguments. First, Prime argues that the forum-selection clause in the insurance contract signed between the parties requires this action to be litigated in the courts of Utah and requires dismissal of the claims against Prime. Second, as an alternative argument, Prime argues that the doctrine of forum *non conveniens* suggests dismissal of the claims against Prime. Wildfire disagrees on both counts and argues that the forum-selection clause does not govern the current action, and that forum *non conveniens* presents no challenge to the case continuing in this district. For the reasons set forth below, the Court finds that, under the applicable legal standard, the forum-selection clause in the insurance contract does not apply to the claims Wildfire brings under the Trust Agreement and that forum *non conveniens* does not compel dismissal of the claims against Prime. Therefore, the motion is due to be DENIED.

A.     **Forum-selection Clause**

The United States Supreme Court has established two separate standards for considering the impact of forum-selection clauses on venue. In *M/S Bremen v. Zapata Off-Shore Company,* the Court altered the "traditional view of many American courts" that forum-selection clauses removing a case from American courts are against public policy and unenforceable. 407 U.S. 1, 6 (1972). The Court determined instead that "such clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." *Id.* at 10 (internal quotations omitted). The Court listed "fraud, undue influence, or overweening bargaining power" as conditions that might make enforcement of a forum-selection clause unreasonable. *Id.* at 12.

The Supreme Court in *Zapata* said its given standard "is the correct doctrine to be followed by federal district courts sitting in admiralty." *Zapata,* 407 U.S. at 10. However, some lower courts applied *Zapata* to forum-selection clauses generally. *See, e.g., In re Firemans Fund Ins. Cos.,* 588 F.2d 93, 95 (5th Cir. 1979) (applying *Zapata* to a transfer under 28 U.S.C. § 1404(a)).

The Supreme Court made clear in a later case that the *Zapata* standard did not govern all considerations of forum-selection clauses. In *Stewart Organization, Inc. v. Ricoh Corporation,* the Court considered "whether a federal court *sitting in diversity* should apply state or federal law in adjudicating a motion to transfer a case to a venue provided in a contractual forum-selection clause." 487 U.S. 22, 24 (1988) (emphasis added). After noting that the Eleventh Circuit "applied the standards articulated in the

7

*admiralty* case of" *Zapata,* the Supreme Court "affirm[ed] under somewhat different reasoning." *Id.* at 25 (emphasis added). The Court found that "the first question for consideration should have been whether [28 U.S.C.] § 1404(a) itself controls respondent's request to give effect to the parties' contractual choice of venue." *Id.* at 29. The Court went on to say that a forum-selection clause "will be a significant factor that figures centrally" in a court's consideration of a motion to transfer under § 1404(a). *Id.* *See also* 14D Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3803.1, at 79 (3d ed. 2007) ("The combined rule of these cases is that a federal court sitting in admiralty jurisdiction should apply a forum-selection clause if it is 'reasonable,' but a federal court sitting in diversity or federal question jurisdiction should take the clause into account only as one element in the balancing test required by Section 1404(a).").

  The resolution of the motion to dismiss turns largely on the fact-finding standards applicable to motions to dismiss for improper venue. Applying these standards to the case at bar, the Court finds that Wildfire has produced sufficient facts by which this Court could conclude that they are not bound by the forum selection clause included within the insurance contract because Wildfire's claims arise out of the Trust Agreement, which does not contain a forum-selection clause. Construing the evidence presented in Wildfire's favor, as the Court must under the standard for ruling on this motion to dismiss, the Court finds that the forum-selection clause does not bar Wildfire from litigating their claims relating to the Trust Agreement in this Court. Therefore, the motion is due to be DENIED on the grounds of the forum-selection clause.

8

B.     **Forum** *Non Conveniens*

Under the doctrine of forum *non conveniens*, "when an alternative forum has jurisdiction to hear a case, and when trial in the chosen forum would establish oppressiveness and vexation to a defendant out of all proportion to plaintiff's convenience, or when the chosen forum is inappropriate because of considerations affecting the court's own administrative and legal problems, the court may, in the exercise of its sound discretion, dismiss the case." *Wilson v. Island Seas Invs., Ltd.,* 590 F.3d 1264, 1269 (11th Cir. 2009) (quoting *Am. Dredging Co. v. Miller,* 510 U.S. 443, 447–48 (1994)). A defendant invoking forum *non conveniens* "bears a heavy burden in opposing the plaintiff's chosen forum." *Wilson,* 590 F.3d at 1269 (quoting *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.,* 549 U.S. 422, 430 (2007)). A plaintiff's choice of forum is entitled to deference, and there is a presumption in favor of a plaintiff's choice of forum. *SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.,* 382 F.3d 1097, 1100–02 (11th Cir. 2004).

A court conducting an analysis of whether to dismiss a case pursuant to forum *non conveniens* must first consider private interest factors. *King v. Cessna Aircraft Co.,* 562 F.3d 1374, 1382 (11th Cir. 2009). Private factors the district court should consider when analyzing a forum *non conveniens* claim include the relative ease of access to sources of proof, access to unwilling and willing witnesses, ability to compel testimony, the possibility of view of premises, and the enforceability of a judgment. *Liquidation Comm'n of Banco Intercontinental, S.A. v. Renta,* 530 F.3d 1339, 1356 (11th Cir. 2008). These factors are not exhaustive, and the district court should be flexible in applying

9

them. *King,* 562 F.3d at 1381–82. "A trial court will look at the private interests first and then, if the balance of the private interests are found 'to be in equipoise or near equipoise,' it will 'determine whether or not factors of public interest tip the balance in favor of a trial in a foreign forum.'" *Id.* at 1382. The Court, therefore, turns first to an analysis of the private interest factors.

Wildfire argues that the private interest factors weigh in favor of resolving the dispute in this Court. They point out, with respect to the sources of evidence and witnesses, that the Trust,[4] the Trustee, and Wildfire are located within this District. (Doc #14.) The two primary witnesses in this action, who handled negotiations with Prime and handled all claims to determine whether the contract qualifies for a buy back, reside in this District. (Doc. #14.)  Additionally, Wildfire submits that public interest factors also favor litigation in Alabama. Specifically, Wildfire argues that the choice of law provision included within the Trust Agreement require that Alabama law govern disputes arising out of the Trust Agreement. (Doc. #14.) Therefore, Wildfire contends that this Court could more properly apply Alabama law.

Wildfire contends that the private and public interest factors, together with the strong preference afforded to the plaintiff's chosen forum, defeat Prime's motion to dismiss for forum *non conveniens*. Balancing the private and public interest factors presented by Wildfire, together with the presumption in favor of the plaintiff's chosen forum, the Court cannot say that trying this case in the Middle District of Alabama would

---

[4]  Plaintiff's claims stem from Prime's alleged failure to release funds that are held in a trust account in Alabama. (Doc. #14.)

10

be oppressive, vexatious, or necessarily inconvenient for Prime.  Moreover, Wildfire has chosen this forum because it is a convenient one, and the Court should only disturb this choice if the balance strongly favors the defendant, which, in this case, it does not. *Wilson,* 590 F.3d at 1270.

Prime argues, on the other hand, that the Court should grant the Motion to Dismiss because the same claims are already being litigated in state court in Utah.  The Court construes Prime's argument as one of judicial economy.  Judicial economy may be considered as a public interest factor courts look to when determining whether to transfer for forum *non conveniens.  Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.,* 549 U.S. 422, 423 (2007).  A district court, therefore, may dispose of an action by a forum *non conveniens* dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant.  *Id.* However, no judicial economy is served by transferring this action to a federal court in Utah.  The parties would still be litigating this case in both federal and state court until one of the courts reaches a judgment on the merits of the claims.[5]  *Kizzire v. Baptist Health Sys., Inc.*, 441 F.3d 1306 (11th Cir. 2006).

Weighing the public and private interest factors presented by both parties, the Court finds that the strong presumption in favor of Wildfire's choice of forum, coupled

---

[5] The pendency of an action in state court "is no bar to proceedings concerning the same matter in federal court, and since the federal courts have a virtually unflagging obligation to exercise their jurisdiction," abstention would apply in only extraordinary situations.  *Jackson-Platts v. General Electric Capital*, 2013 WL 4463006, at *10 (11th Cir. Aug. 22, 2013).  Because Wildfire has a right to bring suit in federal court, and because the law allows for two suits with the same parties and similar claims be pending in both state and federal court, Prime's argument necessarily fails.

with the private and public factors weighing against dismissal, require denial of Prime's Motion to Dismiss for forum *non conveniens.*

## V. CONCLUSION

For reasons set forth above, it is hereby ORDERED that Defendant Prime's Motion to Dismiss (Doc. #6) is DENIED AS MOOT, and its Motion to Dismiss Amended Complaint (Doc. #12) is DENIED.

Done this the 30th day of September, 2013.

                                                        /s/ Mark E. Fuller
                                    UNITED STATES DISTRICT JUDGE