## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **WILDFIRE GROUP, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:12-cv-847-MHT-PWG** |
| | ) | |
| **PRIME INSURANCE** | ) | |
| **COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>REPORT AND RECOMMENDATION</u>

This lawsuit arises out of a troubled business relationship, and the parties seek a determination of their rights and liabilities by declaratory judgment.  On October 2, 2012, Plaintiff Wildfire Group, LLC ("Wildfire"), filed this action as a petition for declaratory judgment pursuant to 28 U.S.C. §§ 2201, 2202 and asserted various state law causes of action arising under Alabama law.  On November 25, 2013, Defendant Prime Insurance Company ("Prime") filed an Answer to Wildfire's Amended Complaint, and brought a counterclaim for declaratory judgment.[1]  This court

---

[1] Two months before Wildfire filed this action, Prime filed a complaint for declaratory judgment in the Third Judicial District Court of Salt Lake County, Utah, on August 6, 2012.  In the Utah lawsuit, Prime's complaint for declaratory judgment and Wildfire's counterclaims against Prime in that litigation seek the same substantive relief as in this lawsuit and are based on the same underlying facts.  The parties maintained both lawsuits until February 7, 2014, when the Utah case was dismissed by a stipulated order of declaratory judgment, discussed *infra*.  (Doc. 66-9).  Some of the matters at issue in this case were adjudicated by the Utah court.

previously found that subject matter jurisdiction is conferred by 28 U.S.C. § 1332, and that there are sufficient allegations to support venue and personal jurisdiction. (Doc. 28).

On November 25, 2014, United States District Judge Myron H. Thompson referred this case to the undersigned for disposition or recommendation on all pretrial matters. (Doc. 60); *see also* 28 U.S.C. § 636(b); Rule 72, Fed. R. Civ. P.; *United States v. Raddatz,* 447 U.S. 667 (1980); *Jeffrey S. v. State Board of Education of State of Georgia,* 896 F.2d 507 (11th Cir. 1990). Wildfire filed a motion for partial summary judgment (Doc. 64) as to its claim for declaratory judgment, but not its state law claims. Prime filed a motion for summary judgment (Doc. 67) on all Wildfire's claims, but not as to its own counterclaims. The cross-motions for summary judgment are taken under submission on the record and without oral argument.

The Magistrate Judge **RECOMMENDS** that, because there are no disputes of material fact, summary judgment is appropriate on the parties' requests for declaratory judgment, as specified herein, and that Prime's motion for summary judgment (Doc. 67) is due to be **GRANTED**.

## I.   STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000).[2]  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  Once the moving party has met its burden, Rule 56 requires the nonmoving party to go beyond the pleadings and, by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.  *Celotex*, 477 U.S. at 324.

The substantive law will identify which facts are material and which are irrelevant.  *Chapman*, 229 F.3d at 1023; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant.  *See Chapman*, 229 F.3d at 1023; *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  When opposing a motion for

---

[2]  In 2007, Rule 56 was amended in conjunction with a general overhaul of the Federal Rules of Civil Procedure. The Advisory Committee was careful to note, however, that the changes "are intended to be *stylistic only*." Adv. Comm. Notes to Fed. R. Civ. P. 56 (2007 Amends.) (emphasis supplied). Consequently, cases interpreting the previous version of Rule 56 are equally applicable to the revised version.

summary judgment, however, the nonmovant can no longer rest on mere allegations, but must set forth evidence of specific facts. *See Lewis v. Casey*, 518 U.S. 343 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).   A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Chapman*, 229 F.3d at 1023.   If the evidence [presented by the nonmoving party to rebut the moving party's evidence] is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249.

Although there are cross-motions for summary judgment, each side must still establish the lack of genuine issues of material fact and that it is entitled to judgment as a matter of law. *See Chambers & Co. v. Equitable Life Assur. Soc. of the U.S.*, 224 F.2d 338, 345 (5th Cir. 1955); *Matter of Lanting*, 198 B.R. 817, 820 (Bankr. N.D. Ala. 1996).   The court will consider each motion independently, and in accordance with the Rule 56 standard. *See Matsushita Elec. Indus. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).   "The fact that both parties simultaneously are arguing that there is no genuine issue of fact, however, does not establish that a trial is unnecessary thereby empowering the court to enter judgment as it sees fit." *Citizens Bank and Trust v. LPS Nat. Flood, LLC*, 51 F.Supp.3d 1157, 1168-69 (N.D. Ala. 2014); *see also Culpepper v. Inland Mortg. Corp.*, 243 F.R.D. 459, 463 n.1 (N.D.

Ala. 2006) (quoting WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 2720, at 327-28 (3d ed. 1998)) (same).

## II.    BACKGROUND AND MATERIAL FACTS[3]

Wildfire sells a product known as a "Vehicle Service Contract Buy Back Agreement" through independent agents who market the product to automobile dealerships.  (Doc. 11 at p. 3; Doc. 66-2).  When a dealership's customer purchases an extended warranty or extended service contract, the dealership also sells the customer one of Wildfire's buy back agreements.  (Doc. 66-2).  Wildfire's product provides a future guarantee to the customer that if he or she does not make a claim against the extended warranty or extended service contract, once the contract expires and the customer complies with other terms and conditions, then Wildfire will refund to the dealership's customer all or part of the cost of the extended warranty or service contract.  (Doc. 66-2).  In other words, the customer is hedging against the possibility

---

[3] The parties discuss and debate a panoply of presumed "facts" in their briefs, many of which are immaterial.  The material facts for purposes of summary judgment are those related to the claims and counterclaims raised in the pleadings.  The causes of action announced by the parties for the first time on summary judgment and that do not have a basis in the pleadings are not considered.  If a "fact" is omitted from this Report and Recommendation, it is because it is not a material fact for purposes of this recommendation on the cross-motions for summary judgment.

Also, when both offering facts or opposing evidence identified by Prime, Wildfire relies on representations by its counsel that are not accompanied by a reference to evidence of record.  "Statements by counsel in briefs are not evidence."  *Skyline Corp. v. N.L.R.B.*, 613 F.2d 1328, 1337 (5th Cir. 1980).  Where a statement of fact in a party's brief is not supported by evidence, it is not considered.

5

that he or she is buying an extended service contract or warranty that will never be used.

Prime issued an insurance policy to Wildfire to guarantee Wildfire's performance under the buy back agreements. (Doc. 22). One of Prime's requirements for issuance of a policy was that Wildfire and Prime establish an irrevocable trust for the benefit of Prime. (Doc. 1-1). The parties executed a Trust Agreement, wherein Wildfire is named as the "trustor" and Prime is named as the "insured." (*Id.*). The instrument also names a Trustee, who is not a party to these proceedings. The parties agree and the Trust Agreement sets out that it is, in relevant part, governed by and to be construed under Alabama law. (Doc. 1-1 at p. 12).

Under the terms of the Trust Agreement, Wildfire deposits into the trust the purchase price of the buy back agreements, excluding fees, taxes, and other allowed deductions. (Doc. 1-1). The trust is maintained "to pay certain obligations to the Vehicle Service Contract Buy Back Holders." (Doc. 1-1). The Trust Agreement states that "[a]ll Trust Assets shall be held by the Trustee in the name of the Trustee, as trustee of the trust, or in the name of a nominee of the Trustee." (Doc. 1-1 at p. 6).

The "term" of the irrevocable trust commenced on September 30, 2010, and it

terminates when (i) [Wildfire] ceases to issue or acquire Insured Vehicle Service Contract Buy Back Agreements and (ii) no unsettled claim by any Holder of an Insured Vehicle Service Contract Buy Back Agreement

6

is outstanding and (iii) no such claim may thereafter be asserted pursuant to the terms of any Insured Vehicle Service Contract Buy Back Agreement.

(Doc. 1-1 at p. 10, p. 4).  At "any time" after September 30, 2010, if

no Insured Vehicle Service Contract Buy Back Agreement remains in force, and no unsettled claim by a Holder of an Insured Vehicle Service Contract Buy Back Agreement has been outstanding for a period of ninety (90) days after the expiry of all liabilities, it shall be conclusively deemed that no such claim may thereafter be asserted.

(Doc. 1-1 at p. 10).  Under the Trust Agreement, those are the only circumstances by which the trust terminates.  The trust does not terminate when and because Prime ceases to insure Wildfire.  (Doc. 1-1 at p. 10).

The Trust Agreement contains a provision that addresses the disposition of trust assets once the trust terminates.

Upon the expiration of the Term, the Trustee shall Distribute to [Wildfire] and [Prime] a final profit sharing payment of all the Trust Assets and all right, title, and interest of the Trustee in any other property, tangible or intangible, constituting part of the Trust Estate, and [Prime] and [Wildfire] shall submit a Distribution Request to the Trustee to accomplish such Distribution.

(Doc. 1-1 at p. 10).

The Trust Agreement provides that, during the life of the trust, there are four instances when the parties are entitled to request a distribution of the trust assets.  A distribution can be made: (1) to Wildfire "for payment of, or reimbursement for,

7

Losses or Refunds, and such Distribution Request ... must be signed by [Wildfire and Prime]"; (2) to Wildfire and Prime "for payment of Profit Share Payments" upon the written agreement of both parties; (3) to Prime "for amounts owed to Prime under any Policy" upon the written agreement of both parties; and (4) to Wildfire for "Excess Release."[4]  (Doc. 1-1).  If Wildfire makes a disbursement request, Prime must either approve the request or timely deliver to Wildfire a written explanation of Prime's reason for denying the request.  (Doc. 1-1 at p. 5).  Prime's "failure to respond" to Wildfire's request for a disbursement "shall not be deemed an approval."  (Doc. 1-1 at p. 5).  A request for a disbursement of trust assets does not entitle the requesting party to the disbursement.  The Trust Agreement is clear that, in order for a distribution to be made, both Wildfire and Prime must agree in writing.  There is no provision in the Trust Agreement that mandates a disbursement under any circumstance other than the written agreement of the parties or the expiration of the term of the trust.  The termination of the trust term is the only event that entitles Wildfire and Prime to a distribution of trust assets.  (Doc. 1-1).

"On October 6, 2011, Prime notified Wildfire that it was cancelling the Policy

_____

[4] "Excess Release" is defined in the Trust Agreement as "an amount to be calculated after expiration of contracts" as otherwise agreed by the parties in documents incorporated by reference into the Trust Agreement "with the beginning effective date as of January 1, 2010." (Doc. 1-1 at p. 3).  Generally, "Excess Release" is the amount of trust assets remaining after the liability to Prime for various Insured Vehicle Service Contract Buy Back Agreement lapses.

and that termination of coverage would take effect on December 9, 2011 at 12:01 A.M." (Doc. 66-9 at p. 2).  "After December 9, 2011, Wildfire continued to market and sell" Vehicle Service Contract Buy Back Agreements.  (Doc. 66-9 at p. 2).  After notice of cancellation, representatives of Wildfire and Prime negotiated in an attempt to continue their relationship and for Wildfire to remain insured by Prime after December 9, 2011; however, the negotiations were not fruitful.

Wildfire sent premium payments to Prime after December 9, 2011.  During negotiations or after negotiations broke down, Prime became concerned that Wildfire was taking the position that Prime continued to insure Wildfire after the policy's cancellation date.  While the parties negotiated, Wildfire continued to pay into the trust after December 9, 2011, and contributed approximately $278,400.00 after the insurance policy was cancelled.  (Docs. 11 & 65).  Wildfire represents that it made these payments because of Prime's recommendation, Wildfire's "assumption," or Wildfire's "mistake."  (*Id.*).  Wildfire made a request to Prime that Prime authorize a distribution from the trust in the amount Wildfire paid into the trust after the policy was cancelled.   Prime has not yet authorized the distribution, despite its representations on the record in these proceedings that it is willing to do so.

As noted above, on August 6, 2012, Prime filed a petition for declaratory judgment in a Utah state court, and Wildfire asserted counterclaims.  (Doc. 66-9).

Two months later, Wildfire filed the instant action, and asserted a claim for declaratory judgment of the parties' rights under the Trust Agreement with respect to Wildfire's request for disbursement of trust assets, as well as causes of action sounding in Alabama state law. Prime filed counterclaims in this action that are substantively identical to the facts and claims asserted in the Utah Lawsuit.

The claims and counterclaims in this case mirror those in the Utah lawsuit. In both declaratory judgment actions, Prime seeks a determination of the date of cancellation and a declaration as to its coverage obligations to Wildfire. Prime also seeks a declaration that it is not required by the Trust Agreement to authorize distributions from the trust. Wildfire seeks a declaration of the parties' rights and responsibilities under the Trust Agreement, with the aim of obtaining injunctive relief in the form of a court order requiring Prime to authorize a distribution of trust assets. (Doc. 11).

Parallel lawsuits proceeded in different jurisdictions, and the parties argued over the appropriate venue for this dispute. The two lawsuits continued in tandem until February 10, 2014, when the Utah court entered a stipulated partial declaratory judgment, wherein that court found that the insurance policy cancelled effective at 12:01 a.m. on December 9, 2011, that Prime owes no duty of coverage for buy back agreements sold after the effective date and time, and that Prime owes a duty of

10

coverage for buy back agreements sold prior to the policy's cancellation date.  (Doc. 66-9).   After reaching those findings, the Utah court dismissed the action with prejudice, and it ordered that "all remaining issues between the parties will be addressed in the pending Alabama Lawsuit and that all rights and defenses are reserved for determination by the Alabama Federal District Court."[5]  (Doc. 66-9 at p. 3).

## III.   DISCUSSION

### A.   The Claims and Counterclaims on Summary Judgment

As noted *supra*, whether by design or inadvertence, the parties seek summary disposition of claims or counterclaims that are either not pled in Wildfire's Amended Complaint or Prime's counterclaims, or are not included in the parties' cross-motions for summary judgment.[6]   Because the parties raise matters in their briefs without a basis in the pleadings or the cross-motions, it is necessary to clarify what is at issue.

Wildfire asserts a claim for declaratory judgment of the parties' rights and obligations "with respect to the proper distribution excess reserve funds and funds

---

[5] The source of the Utah court's power or authority to direct this court to adjudicate any matter remains a mystery.

[6] Federal Rule of Civil Procedure 56 forbids a court from entering summary judgment except on matters raised by parties in a motion for summary judgment or with notice to the parties and allowing the parties an opportunity to respond.  Therefore, Wildfire's motion for partial summary judgment and Prime's motion for summary judgment set the boundaries of the matters discussed herein.

available to pay covered losses"[7] under the Trust Agreement, "[s]pecifically, ... whether [Wildfire] is immediately owed excess reserve funds following the failed negotiation of a new agreement with Prime, during which [Wildfire] continued to pay premiums to Prime and continued to fund the reserve account according to prior course of dealing."  (Doc. 11 at pp. 7-8).  No other declaratory relief is sought in Wildfire's Amended Complaint.  Wildfire asserts a general claim for "injunctive relief" (Count One) as well as state law claims for unjust enrichment (Count Three), breach of fiduciary duty (Count Three), breach of a duty of good faith and fair dealing (Count Four), fraudulent inducement (Count Five), rescission (Count Five), intentional interference with contractual relations (Count Six), and intentional interference with business relations (Count Six).

In its counterclaim, Prime seeks a declaratory judgment as to its coverage responsibilities to Wildfire, disposition of the remainder of a $20,000.00 advance payment by Wildfire to Prime to purchase the insurance policy, the disposition of Wildfire's premium payments paid to Prime after the insurance policy was cancelled effective December 9, 2011, and its rights and obligations under the Trust Agreement

---

[7] The Trust Agreement does not define the term "excess reserve funds."  It does allow either Prime or Wildfire to request a disbursement of trust funds for "payment" or "reimbursement" for "Losses," which is defined in the document as "amounts paid or payable by [Wildfire] pursuant to Insured Vehicle Service Contract Buy Back Agreements in respect of claims made."  (Doc. 1-1 at pp. 3, 5). "Losses," as that term is defined in the Trust Agreement, do not include money paid into the trust or insurance premiums remitted to Prime by Wildfire.

with respect to distribution of trust assets because "the parties now agree that their relationship has ended."  (Doc. 32).  Critically, however, Prime only moves for summary judgment with respect to Wildfire's claims set out in the Amended Complaint.  (Doc. 67).  As such, no party has moved for summary judgment on Prime's counterclaims, and the scope of the cross-motions for summary judgment is limited to an examination of Wildfire's claims, as they are pled in the Amended Complaint.[8]

To the extent that Wildfire makes arguments on summary judgment that the parties' rights under agreements other than the Trust Agreement are before this court, those matters have not been pled and are not at issue.  *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.").  Moreover, any claims or counterclaims not appearing in Wildfire's Amended Complaint or Prime's Answer, but that are discussed or raised on summary judgment, are not properly before the court.[9]  *Id.*

---

[8] It is not evident that this court possesses subject matter jurisdiction over Prime's counterclaims that remain pending after the Utah court's order.  That will be addressed by a separate order.

[9] For example, Wildfire discusses the elements of a breach of contract claim; however, one was not pled.  (Doc. 65 at p. 9).  On summary judgment, Wildfire requests a declaration that Prime owes Wildfire a refund of insurance premiums, which relates to one of Prime's counterclaims.  Neither party moved for summary judgment on that counterclaim.

The following is properly before the court on the cross-motions for summary judgment: (1) Wildfire's motion for partial summary judgment on its claim for a declaratory judgment on the issue of whether the Trust Agreement obligates Prime to authorize a disbursement of trust assets in the amount of Wildfire's contributions to the trust after December 9, 2011 at 12:01 a.m.; (2) Prime's motion for summary judgment as to Wildfire's petition for declaratory judgment; and (3) Prime's motion for summary judgment on Wildfire's claim for injunctive relief and Wildfire's state law causes of action.

There is no motion for summary judgment with respect to Prime's counterclaims for a declaratory judgment that: (1) the insurance policy at issue was cancelled effective on December 9, 2011;[10] (2) that Prime owes no duties to Wildfire under the policy after that date; (3) Prime "should refund the balance of the $20,000.00 advance payment deposit to Wildfire because it has no continuing obligation under" the policy; (4) "Prime should not negotiate Wildfire premium payments [remitted for any period after December 9, 2011] because [Prime] has no continuing obligation" under the policy; and, (5) "[t]he Trust Assets should be

---

[10] The parties stipulated to the partial declaratory judgment entered by the Utah court. (Doc. 66-9).  The policy cancellation date and Prime's duty of coverage was declared by that court, and those matters will not be entertained in this action.  The parties are barred by collateral estoppel from departing from the declaration of the Utah court.

administered consistent with the provisions of the Policy and Trust Agreement until all of the relevant contracts have expired[, and, at] that time, the Trust Assets should be distributed pursuant to the Policy and Trust Agreement[.]" (Doc. 32 at p. 25). The counterclaims remain pending and are not considered on the instant motions.

### A.    Wildfire's Claim for Injunctive Relief

In its Amended Complaint, Wildfire asserts "injunctive relief" as a stand-alone claim in Count One.[11]  (Doc. 11).  Prime moves for summary judgment as to that claim.  "Injunctive relief" is not a legal claim; it is a remedy.  *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1127 (11th Cir. 2005), *cert. denied*, 547 U.S. 1192, 126 S.Ct. 2862, 165 L.Ed.2d 895 (2006); *Transatlantic, LLC v. Humana, Inc.*, No. 8:13–CV–1925–T–17TBM, 2014 WL 5039667, at *9 (M.D. Fla. Sept. 30, 2014). Prime's motion for summary judgment is due to be granted insofar as Wildfire makes a "claim" for injunctive relief; however, Wildfire's petition for injunctive relief is preserved as a potential remedy.

### B.    Declaratory Judgment: The Trust Agreement Does Not Obligate Prime to Authorize a Disbursement of Trust Funds.

A federal court "may declare the rights and other legal relations of any

---

[11] The injunctive relief Wildfire seeks is "an Order directing Prime to authorize immediate release from Trust those funds which were deposited after the effective cancellation date of the Prime policy[.]"  (Doc. 65 at pp. 8-9).

15

interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).   Such a declaration resolves an actual case or controversy and is not an impermissible advisory opinion.  *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007).

> Article III of the U.S. Constitution "limits the jurisdiction of federal courts to cases and controversies." *Christian Coal. of Fla., Inc. v. United States*, 662 F.3d 1182, 1189 (11th Cir. 2011) (internal quotation marks omitted). Similarly, 28 U.S.C. § 2201 provides that a declaratory judgment may only be issued in the case of "actual controversy," that is, a "substantial continuing controversy between parties having adverse legal interests." *Emory v. Peeler*, 756 F.2d 1547, 1551-52 (11th Cir. 1985); *see* 28 U.S.C. § 2201. This "continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury." *Emory*, 756 F.2d at 1552.

*Hartford Cas. Ins. Co. v. Intrastate Const. Corp.*, 501 F. App'x 929, 937 (11th Cir. 2012).  "The rule in federal cases is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Steffel v. Thompson*, 415 U.S. 452, 460 n. 10, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974).  In declaratory judgment actions, the "actual controversy" requirement is imposed both by Article III of the Constitution and the express terms of the Federal Declaratory Judgment Act. *Id*. at 458, 94 S.Ct. 1209.  "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to

warrant the issuance of a declaratory judgment." *MedImmune, Inc.*, 549 U.S. at 127, 127 S. Ct. at 771 (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941)). "Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against an adverse party whose rights have been determined by such judgment." 28 U.S.C. § 2202. Further relief is not a necessary outcome of a declaratory judgment action; in fact, the court can declare the rights of the parties and dismiss the case. 28 U.S.C. § 2201.

"[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995) (citation omitted). "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Id.* at 288.

The case at bar presents issues of substantial disagreement between the parties as to their rights and relationships under the Trust Agreement; specifically, whether Prime is obligated to authorize a disbursement of trust assets to Wildfire. Wildfire's motion for partial summary judgment and Prime's motion for summary judgment are due to be granted, but only insofar as they request a declaratory judgment of whether

17

Prime is required by the Trust Agreement to authorize a disbursement by the trustee of money paid by Wildfire into the trust after Prime cancelled the insurance policy effective December 9, 2011.

Wildfire has not identified any language in the Trust Agreement to support its position that Prime must authorize the disbursement of the funds requested by Wildfire. That is most likely because there is none. Prime is not required by the Trust Agreement to authorize the trustee to disburse the funds Wildfire paid into the trust during the period after Prime cancelled the insurance policy. There is no provision in the Trust Agreement requiring the parties to authorize any disbursement whatsoever. The only required disbursement is upon the trust's termination. Wildfire asserts that it paid the money at issue under an "assumption" (Doc. 65) or as a result of a "mistake" (Doc. 11) — *i.e.*, a belief or understanding that its negotiations with Prime would absolutely result in a new or renewed insurance policy issued by Prime. Wildfire's actions in continuing to pay into the trust after the cancellation of the insurance policy, whether induced by Prime or not, do not translate to an obligation under the Trust Agreement to authorize payment of trust assets to Wildfire.

## C. State Law Claims

Wildfire bears the burden to present substantial evidence to support its claims in order to overcome summary judgment. *See* Ala. Code (1975) § 12-21-12 (requiring

18

"substantial evidence" at summary judgment and to present a civil action to a jury).[12]

On the record when viewed in a light most favorable to Wildfire, Prime is entitled to

summary judgment on each of Wildfire's state law claims.

### 1.    Unjust Enrichment[13]

An unjust enrichment claim sounds in equity.  *See Battles v. Atchison*, 545

So.2d 814, 815 (Ala. Civ. App. 1989).  "To prevail on a claim of unjust enrichment,

the plaintiff must show that the 'defendant holds money which, in equity and good

conscience, belongs to the plaintiff or holds money which was improperly paid to

defendant because of mistake or fraud.'"  *Scrushy v. Tucker*, 955 So. 2d 988, 1011

(Ala. 2006) (quoting *Dickinson v. Cosmos Broad. Co.*, 782 So.2d 260, 266 (Ala.

2000) (quoting, in turn, *Hancock-Hazlett Gen. Constr. Co. v. Trane Co.*, 499 So.2d

---

[12] "Substantial evidence shall mean evidence of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions as to the existence of the fact sought to be proven. A scintilla of evidence is insufficient to permit submission of an issue of fact to the trier of facts."  Ala. Code (1975) § 12-21-12(d).

[13] Wildfire asserts, correctly, that "[t]he success or failure of an unjust enrichment claim depends on the particular facts and circumstances of each case." (Doc. 72 at p. 16 (quoting *Avis Rent A Car Sys., Inc. v. Heilman*, 876 So.2d 1111, 1123 (Ala. 2003))).  From that general statement of law, Wildfire extrapolates that summary judgment is *always* inappropriate for a claim of unjust enrichment.  (Doc. 72 at p. 16).  Wildfire's argument is missing a link in its logical chain.  This court could find no decision by an Alabama court holding that summary judgment is *per se* improper for an unjust enrichment claim.  To the contrary, the Alabama Supreme Court affirmed a trial court's decision granting a defendant's motion for summary judgment on such a claim in a bitterly fought, fact-intensive dispute, which suggests Wildfire is incorrect.  *See Welch v. Montgomery Eye Physicians, P.C.*, 891 So.2d 837 (Ala. 2004) (affirming trial court's order granting a defendant's motion for summary judgment on an unjust enrichment claim).

1385, 1387 (Ala. 1986))) (emphasis omitted).  On the evidence of this case, Wildfire cannot demonstrate that Prime "holds" the money in the trust.

The money that Wildfire contends is held by Prime are the funds Prime has not agreed to disburse from the trust to compensate Wildfire for the payments it made after the cancellation of the insurance policy.  As a matter of law, and pursuant to the Trust Agreement, the assets of the trust belong to the trustee, and not to Prime or Wildfire.  *See Regions Bank v. Lowrey*, 101 So.3d 210 (Ala. 2012).  Prime does not "hold" money belonging to Wildfire; the trust holds money belonging to the trust. Wildfire has neither rebutted Prime's argument that it does not "hold" the funds at issue, nor identified evidence or a legal means by which the trust assets are "held" by Prime.  Wildfire bases its unjust enrichment claim on an incorrect assumption that it meets an essential element of a cause of action — that Prime holds the trust assets. Wildfire bears the burden to present evidence that Prime holds the trust assets, and has failed to do so.  To the contrary, it is undisputed that the funds at issue are trust assets.  That fact defeats the unjust enrichment claim.

Wildfire argues that Prime controls the trust assets because Prime's assent to a distribution of those assets is necessary and, according to Wildfire, Prime is

unwilling to release the trust assets to Wildfire.[14]   By the terms of the Trust

Agreement, neither Wildfire nor Prime can unilaterally cause the trustee to disburse

the trust assets.   Prime and Wildfire have an equal amount of control, or lack thereof,

over the trust assets in that both must agree to a disbursement.   Prime or Wildfire has

absolutely no control over the trust assets without the assent of the other.   Material

to an unjust enrichment claim, however, is that Wildfire has not demonstrated that

Prime holds the funds.   Moreover, Wildfire has not shown that it is the proper owner,

at law or equity, over the funds at issue.

As such, the unjust enrichment claim fails.

### 2.   Breach of Fiduciary Duty

The "elements" of a claim for breach of a fiduciary duty are as follows: (1) the

existence of a fiduciary duty between the parties; (2) the breach of that duty; and (3)

damages suffered as a result of the breach."   *Regions Bank*, 101 So.3d at 219 (citing

*Hensley v. Poole*, 910 So.2d 96, 106 (Ala. 2005)).   Wildfire's breach of fiduciary duty

claim is premised on Wildfire's contention that Prime owes Wildfire a fiduciary duty

because of the formation of the trust.   (Doc. 11 at p. 9 ("At ... all times pertinent to

_____

[14] Prime contends that it is not required by the Trust Agreement or insurance policy to
agree to the disbursement of trust assets.   Wildfire misconstrues Prime's unwillingness to agree
to a disbursement of trust assets as an assertion by Prime that it "cannot" authorize the
disbursement.   Wildfire has not identified evidence that Prime represented to Wildfire that it
could not authorize release of the trust assets, only that Prime will not so authorize.

this action, the parties were in a confidential fiduciary relationship."); Doc. 72 at p. 18 ("An express trust creates a fiduciary relationship[.]") (marks and citation omitted)).   In support of its argument that a fiduciary relationship exists between Wildfire and Prime, Wildfire directs the court to a dissent in *First Nat. Bank of Mobile v. Pope*, 149 So.2d 781, 792 (Ala. 1963) and extra-jurisdictional authority in *In re Town & Country Corp.*, No. BAP MB 99-030, 2000 WL 35915909, at *4 (B.A.P. 1st Cir. July 10, 2000).

Wildfire quotes from the Bankruptcy Appeals Panel for the First Circuit in *In re Town & Country Corp.* in support of its argument that "[a]n express trust creates a fiduciary relationship."  *Id.*  Wildfire relies on the dissent in *Pope* for the same proffered premise.  However, those two decisions do not support Wildfire's assertion that, as a matter of law, the "trustor" and "insurer" to a trust agreement have a fiduciary relationship.  Under Alabama law, a fiduciary duty exists between a trustee and the beneficiaries of a trust because of the function of the trustee in preserving the trust assets.  *Regions Bank*, 101 So.3d at 219.  Both *Pope* and *In re Town & Country Corp.* also pronounce that statement of law.  Neither case holds or even hints at a conclusion that a fiduciary duty arises among *all* parties to a contract that creates a trust.

Setting aside that Wildfire relies on a decision by the First Circuit and a dissent

22

by the Alabama Supreme Court as binding statements of Alabama law, Wildfire misstates both cases by relying on fragments, not complete sentences. The phrase Wildfire quotes in its briefing, that "[a]n express trust creates a fiduciary relationship," cannot be read in isolation or in a vacuum. When one continues reading the same sentences quoted in part by Wildfire from both *In re Town and Country Corp.* and in *Pope*, those cases makes it clear that the fiduciary relationship is created between the trustee and the beneficiaries of the trust, and that statement is consistent with Alabama law on the subject. *See Regions Bank*, *supra*.; *Cf.*, *Pope*, 149 So.2d at 792 ("An express trust is a fiduciary relationship with respect to property, arising as a result of a manifestation of an intention to create it and *subjecting the person in whom the title is fixed* to equitable duties to deal with it for the benefit of others.") (emphasis supplied); *In re Town & Country Corp.*, No. BAP MB 99-030, 2000 WL 35915909, at *4 (B.A.P. 1st Cir. July 10, 2000) (A trust "creates a fiduciary relationship with respect to property, *subjecting the person by whom the title to the property is held* to equitable duties to deal with the property for the benefit of another person, which arises as a result of a manifestation of an intention to create it.") (quoting Restatement (Second) of Trusts § 2 (1959)) (emphasis supplied). It is disingenuous for a party to distort the legal authority on which it relies, particularly when that party parses a sentence that, when read in full,

does not support the party's articulated position.

Prime argues that Wildfire has not offered any legal authority for its assertion that the parties shared a fiduciary relationship, and the court has found none. (Doc. 75 at p. 6). Wildfire also fails to provide evidence that Prime owed Wildfire a fiduciary duty because of the trust, and Wildfire has not explained how Prime breached a fiduciary duty except to amorphously allege that Wildfire continued to pay money into the trust because of a "mistake" and because the Chief Financial Officer of Prime "recommended" that Wildfire do so. (Doc. 11). A mistake by Wildfire does not evidence a breach of a duty by Prime, assuming such a duty.

Wildfire has also not demonstrated the final element for a breach of fiduciary duty claim: "damages suffered as a result of the breach." *Regions Bank*, *supra*. A claim for breach of fiduciary duty requires a party to specify how damages suffered were caused by the breach, and Wildfire fails to make this critical connection by alleging and arguing that it is entitled to damages generally, but without explaining how those damages resulted from an alleged breach.

Because Wildfire has not shown that Prime owed it a fiduciary duty or that there are damages arising from the alleged breach, Prime is entitled to summary judgment.

### 3.       Breach of Duty of Good Faith and Fair Dealing

Wildfire clarifies in its briefing in opposition to Prime's motion for summary judgment that its claim for breach of a duty of good faith and fair dealing arises from Wildfire's allegation that "Prime negotiated with 'tortious intent during its renegotiations with Wildfire.'" (Doc. 72 at p. 18 (quoting Doc. 68 at p. 25)). Specifically, Wildfire's basis for this claim is "that Prime's refusal to authorize release of the funds from trust was a breach of the duty of good faith and fair dealing." (Doc. 72 at p. 18).

Prime argues, and Wildfire does not rebut, that there is no tort under Alabama law for breach of a duty of good faith and fair dealing. The Alabama Supreme Court has refused to create a stand-alone claim in the vein of "bad faith" for one's failure to act with good faith "to the general area of contract law." *Harrell v. Reynolds Metals Co.*, 495 So.2d 1381, 1388 (Ala. 1986) (affirming entry of summary judgment against a plaintiff who sought to recover in tort for a breach of an employment contract and finding that the tort law claim failed as a matter of law because "[a]lthough every contract does imply good faith and fair dealing (see § 7-1-203, Code 1975), it does not carry with it the duty imposed by law which we have found in the context of insurance cases" and refusing "to extend to the area of general contract law the tort of bad faith that we have recognized in the context of insurance

25

policy cases"). *See also Hoffman-La Roche, Inc. v. Campbell*, 512 So.2d 725, 738 (Ala. 1987) (The "obligation of 'good faith' arises as part of the contract ... [and] its breach does not give rise to an action in tort.") (citing *Harrell*, *supra*).[15]  Wildfire does not assert a breach of contract claim in its Amended Complaint.  Accordingly, summary judgment is appropriate in Prime's favor.

### 4.    Fraudulent Inducement

Wildfire claims that it was fraudulently induced by Prime into continuing to pay into the trust account while the parties were negotiating after Prime cancelled the insurance policy, and that Prime had no intention of reinsuring Wildfire or of permitting disbursements from the trust.  In its motion for summary judgment, Prime argues that the claim is "fatally flawed as a matter of law" because "the record is completely devoid of any evidence that Prime did not do anything it promised Wildfire." (Doc. 68 at pp. 25-26).  Wildfire, instead of identifying evidence of record to challenge Prime's assertion of the absence of evidence, Wildfire, which has the burden of proof on its fraudulent inducement claim, chose instead to argue only that "[w]hether the elements of fraud are met is a question of fact" that should be resolved by a jury.  (Doc. 72 at pp. 20-21).

---

[15] Wildfire relies on *Hoffman-La Roche* in support of its argument against summary judgment on its claim for breach of the duty of good faith and fair dealing, which is surprising given the Court's reiteration that such a claim is not cognizable.  (Doc. 72 at pp. 19-20).

> "Fraud" is defined as (1) a false representation (2) of a material existing fact (3) relied upon by the plaintiff (4) who was damaged as a proximate result of the misrepresentation. If fraud is based upon a promise to perform or abstain from performing in the future, two additional elements must be proved: (1) the defendant's intention, at the time of the alleged misrepresentation, not to do the act promised, coupled with (2) an intent to deceive.

*Deng v. Scroggins*, 169 So. 3d 1015, 1024 (Ala. 2014). Plaintiff has failed at every element.

The alleged "misrepresentation" — *i.e.*, a recommendation by Prime that Wildfire continue paying into the trust after the insurance policy cancellation — has not been shown to be "false," as there is nothing in the record that shows Prime knew, at the time that representation was made, that it would not continue the insurance relationship. Wildfire presents evidence of negotiations between it and Prime, not that Prime caused Wildfire to take action that it would not otherwise have done with the necessary "intent to deceive."

In Wildfire's complaint, it alleges that it paid into the trust during the relevant period based on its own "mistake." The evidence relied upon by Wildfire does not meet the substantial evidence requirement to present its fraud based claim to a jury.

## 5.   Rescission

Wildfire's claim for "rescission" is misplaced as there is no contract Wildfire alleges it wants to rescind. Under Alabama law, a claim of "rescission" is equitable

in nature and is one asserted by a party to a contract seeking to rescind the agreement because of an adverse party's actions — in this case, alleged fraud by another party to the contract, and rescission extinguishes the contract. *See*, *e.g.*, *Ballew v. Charter Realty ERA*, 603 So.2d 877, 883 (Ala. 1992) (rescission of a contract is an equitable remedy); *Clark v. Wilson*, 380 So.2d 810 (Ala. 1980) (in a case involving a contract for the conveyance of property, the effect of rescission of a contract extinguishes the agreement and places the parties in the position they would have occupied had the contract not been made). A party pleading rescission because of fraud must precisely allege the instances of fraud and fraudulent misrepresentation as fraud will not be presumed by a court. *See Grandberry v. Forrester*, 210 Ala. 172 (Ala. 1923); Fed. R. Civ. P. 9.

As the basis for its rescission claim, Wildfire alleges that Prime cancelled an insurance policy. A claim for rescission does not arise from those facts.

### 6. Intentional Interference with Contractual or Business Relationships

Wildfire asserts that Prime interfered with Wildfire's relationships with the dealerships that sold Wildfire's product when Prime notified the dealerships that it cancelled Wildfire's insurance policy. As a matter of law, this set of facts cannot form the basis of a tortious interference claim with either business or contractual

relationships.

Prime correctly argues that, to be liable for tortious interference claims, it must have been a "stranger" to the relationship between Wildfire and the dealerships. *See Edwards v. Prime, Inc.*, 602 F.3d 1276, 1302 (11th Cir. 2010) (to maintain a tortious interference claim, a plaintiff bears the burden to show a defendant is a "stranger" to the relationship at issue); *Waddell & Reed, Inc. v. United Investors Life Ins. Co.*, 875 So.2d 1143, 1154 (Ala. 2003) (same). Wildfire is incorrect that the analysis is a factual one. (Doc. 72 at p. 21 (urging the court to examine the record for disputes of fact on the "stranger" issue)). Whether a defendant is a "stranger" to a relationship is decided as a matter of law. *Waddell & Reed*, *supra*. "A defendant is a party in interest to a relationship if the defendant has any beneficial or economic interest in, or control over, that relationship." *Id.* (citations omitted).

Wildfire does not plead in its Amended Complaint that Prime is a "stranger" to Wildfire's relationships with dealerships, but pleads that "Prime was not a party to these business and contractual relationships." (Doc. 11 at p. 11). "One is not a stranger to the contract just because one is not a party to the contract[.]" *Waddell & Reed*, 875 So.2d at 1153 (citations and emphasis omitted). A plaintiff must plead facts showing that a defendant was a "stranger" to the business or contractual relationship. *See Edwards*, 602 F.3d at 1302. Nevertheless, when opposing Prime's

motion for summary judgment, Wildfire has distanced itself from its sparse pleading, and clarifies that it seeks to show Prime was not a stranger those relationships. (Doc. 72 at p. 21).

"When the defendant is an essential party to the allegedly injured business relationship, the defendant is a participant in that relationship instead of a stranger to it." *Edwards*, 602 F.3d at 1302. The Eleventh Circuit recognizes that Alabama courts have held that a "defendant was not a stranger to the business relationship between the other two parties because the defendant 'was involved in creating that relationship'" and "that where a contract would not have been consummated without the participation of a certain party, that party is 'anything but a stranger to the relationship[.]'" *Edwards*, 602 F.3d at 1302 (quoting *Tom's Foods, Inc. v. Carn*, 896 So.2d 443, 454 (Ala. 2004); *BellSouth Mobility, Inc. v. Cellulink, Inc.*, 814 So.2d 203, 214 (Ala. 2001)).

The undisputed evidence is that Wildfire relied upon the insurance when inducing dealerships to sell Wildfire's product. Wildfire's Amended Complaint and briefing on the cross-motions for summary judgment underscore that evidence. The basis for Wildfire's claims is, in part, that it lost business from dealerships because Prime cancelled the insurance policy and notified the dealerships. Wildfire cannot credibly argue that Prime and the insurance coverage were necessary components of

30

Wildfire's business and contractual relationships with dealerships while simultaneously arguing that Prime was a "stranger" to the relationship between Wildfire and the dealerships.  Because Prime was no stranger to those relationships, Prime is entitled to summary judgment on Wildfire's tortious interference claims.

## IV.   CONCLUSION AND RECOMMENDATION

Accordingly, for the reasons as stated, it is the **RECOMMENDATION** of the Magistrate Judge that: (1) Wildfire's motion for partial summary judgment (Doc. 64) be **GRANTED IN PART** inasmuch as it requests a declaration of the parties' rights and duties under the Trust Agreement for the purpose of determining whether Prime is required to authorize Wildfire's request for distribution of trust assets, (2) Wildfire's motion for partial summary judgment is otherwise due to be **DENIED**; and (3) Prime's motion for summary judgment (Doc. 67) be **GRANTED** and summary judgment be entered in Prime's favor on all claims. Having determined that Wildfire is not entitled to any relief, other than the aforementioned declaration, which was not resolved in Wildfire's favor, the court does not reach Wildfire's remedies, demand for attorneys' fees, costs, and payment of prejudgment interest.

It is **ORDERED** that the parties shall file any objections to the said Recommendation on or before **October 6, 2015.**  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which

the party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).

**DONE** and **ORDERED** this 22nd day of September, 2015.

/s/ Paul W. Greene
United States Magistrate Judge